IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, STEPHEN A. KRAHLING and JOAN A. WLOCHOWSKI,<br>            *Plaintiffs,*<br>     v.<br>MERCK & CO., INC.,<br>            *Defendant.* | Civil Action No. 10-4374 (CDJ) |

FILED FEB 0 5 2016

## MEMORANDUM

**SITARSKI, M.J.**                                                                                   February 5, 2016

Presently before this Court is Relator Joan A. Wlochowski's Letter Motion for a Protective Order. (ECF No. 89). Defendant Merck & Co., Inc. ("Merck") has opposed this motion. (ECF No. 90). The Honorable C. Darnell Jones, II referred all discovery motions to the undersigned for disposition. (ECF No. 67).

As more fully set forth herein, Relator's Motion is DENIED.

### I.   BACKGROUND

The facts and procedural posture of this case are well-known to the parties, so the Court provides only a brief recitation of the details pertinent to the motion at issue. In this *qui tam* action, Relator,[1] who was formerly employed as a virologist at Defendant's laboratory, alleges Defendant "fraudulently misled the Government and omitted, concealed, and adulterated material information regarding the efficacy of its mumps vaccine in violation of the False Claims Act," 31 U.S.C. §§ 3729-33. (Am. Mem. 1, ECF No. 61).

---

[1] This action was brought by Relator Joan A. Wlochowski, as well as co-Relator, Stephen A. Krahling. (Am. Compl. 1, ECF No. 12).

Discovery in this matter is ongoing, and fact discovery is to be completed by March 1, 2017. (Order, ECF No. 96). The instant motion stems from Defendant's Request for Production No. 19. In its request to Relator, Defendant asked Relator to produce "[a]ll documents concerning, relating to, and/or referencing evaluations of your work at every position you have held, at Merck or otherwise, including, but not limited to, performance evaluations, self-evaluations, and records or notes of performance reviews." (Def.'s Resp. Ex. 2, ECF No. 90). Relator searched her personal files and email for performance evaluations, and produced one non-Merck work evaluation from a prior employer, Amgen. (*See, e.g.*, Relator's Mot. Ex. B). However, she objected to providing performance evaluations from her current employer, Alexion Pharmaceuticals, Inc. ("Alexion"),[2] arguing that "the request is harassing and the information sought [is] irrelevant to the claims and defenses in this case." (Relator's Mot. Ex. A).

Defendant then gave notice that it sought to subpoena Alexion to obtain Relator's evaluations. The subpoena requests the following documents from Alexion:

(1) Documents pertaining to the Alexion positions of (a) "Manager, Quality Assurance," (b) "Senior Manager, Quality Assurance," and (c) "Associate Director, Quality Assurance," including documents sufficient to show a description of each position, responsibilities associated with each position, and the qualifications necessary for each position.[3]

(2) Documents pertaining to [Relator's] employment with Alexion, including documents sufficient to show her (a) application for employment at Alexion, (b) self-assessments, and (c) performance evaluations regarding [Relator].

(3) Documents from [Relator] related to or referencing the Mumps Vaccine including, but not limited to, documents exchanged with Stephen A. Krahling.

---

[2] Relator worked at Amgen in 2007. (*See* Relator's Mot. 2). She began working for her current employer, Alexion, in March 2009. (Relator's Mot. Ex. F).

[3] Relator disclosed that during her tenure at Alexion, she has had several position related to quality assurance, including the positions in the request. (Relator's Mot. Ex. F).

(4) Documents from [Relator] related to or referencing this action.

(Relator's Mot. Ex. D)

## II.  LEGAL STANDARD

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court." *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). As long as the non-privileged information is relevant to any party's claim or defense and is proportional to the needs of the case, parties may utilize various discovery tools, even if the requested information would not be admissible at trial. Fed. R. Civ. P. 26(b)(1); *Guinan v. A.I. duPont Hosp. for Children*, No. 08-228, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008). While the permissible scope of discovery is broad, it is not without limits. Parties may not "simply engage in a fishing expedition." *In re Garden City Employees' Retirement Sys. v. Psychiatric Sol'ns, Inc.*, No. 13-238, 2014 WL 272088, at * (E.D. Pa. Jan. 24, 2014) (quoting *Essex Ins. Co. v. RMJC, Inc.*, No. 01-4049, 2008 WL 2757863, at *2 (E.D. Pa. July 16, 2008)).

Additionally, Federal Rule of Civil Procedure 26(c) provides the Court with authority to enter a protective order for good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Upon a showing of good cause, the Court may "forbid[] the disclosure or discovery," "prescribe[] a discovery method other than the one selected by the party seeking discovery," "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters. *Id.*

### III. DISCUSSION

The parties dispute whether Relator's Alexion job description and performance reviews are relevant to the instant case. Additionally, they disagree as to whether she has established good cause to warrant issuance of a protective order, foreclosing Defendant from serving the subpoena on Alexion.

#### A. Relevance

Plaintiff objects to the proposed subpoena to Alexion, arguing that the information sought in requests one and two of the subpoena is irrelevant.[4] (Relator's Mot. 1). Specifically, she asserts that her responsibilities at Alexion "have had no connection whatsoever to mumps, vaccines, any of the work she did at Merck, or any of the issues involved in this case." (Relator's Mot. 2).

Defendant argues that documents related to Relator's performance at Alexion are relevant to her professional knowledge, skills, and experiences. (Def.'s Resp. 1). Defendant asserts that information about Relator's job description and performance at Alexion may be relevant to any testimony she might provide in the case about her understanding of testing protocols and quality assurance. (*See id.* at 2-3). Additionally, Defendant claims that evaluations at Alexion may be relevant to the extent Defendant may raise Relator's performance as a Merck employee as a defense. (*Id.* at 3).

Relevancy is broadly construed for discovery purposes and is not limited to only the precise issues in the pleadings. *Frank Brunckhorst Co. v. Ihm*, No. 12-0217, 2012 WL 5250399, at *3 (E.D. Pa. Oct. 23, 2012) (quoting *Foster v. Berwind Corp.*, No. 90-0857, 1990 WL 209288, at *6 (E.D. Pa. Dec. 12, 1990)). "Rather discovery requests may be deemed relevant if there is

---

[4] Relator does not argue that requests three and four in the subpoena are irrelevant.

any possibility that the information may be relevant to the general subject matter of the action." *Id.* Where there is doubt over relevance of the discovery request, the Court should be permissive. *Id.*

Documents pertaining to Relator's employment with Alexion, including descriptions of her positions and evaluations, are relevant to this case. In her Complaint, Relator alleged that she witnessed fraudulent efficacy testing when she was employed as a virologist at Defendant's laboratory. (Am. Mem. 3). She claimed that Defendant devised a new and improper testing methodology, which did not represent real-life virus neutralization in vaccinated people, but increased the measurement of Defendant's vaccine success. (Am. Comp. ¶¶ 33-39, ECF No. 12). She also asserted that even after employing the allegedly improper methodology, Defendant falsified the test results. (*Id.* ¶¶ 40-49).

During her tenure at Alexion, Relator has had roles in quality assurance, including manufacturing oversight and quality systems. (Relator's Mot. Ex. F). "Alexion is a global biopharmaceutical company focused on developing and delivering . . . therapies for patients with devastating and rare diseases." About Alexion, http://alxn.com/about-alexion-pharmaceuticals (last visited Feb. 5, 2016); (*see* Def.'s Resp. 1). Although Relator's current work at Alexion does not involve mumps, vaccines, or any work in a laboratory, it involves quality assurance at a biopharmaceutical company that develops therapies "from the laboratory through commercialization." About Alexion, *supra*. To the extent Relator's quality assurance positions at Alexion involve knowledge of testing protocols and methodology of therapies developed from a laboratory, they are relevant to Relator's ability to evaluate Merck's allegedly improper methodology and falsified testing of its mumps vaccine. Likewise, Relator's performance reviews at Alexion may be relevant to assess her credibility of any testimony she might provide

about her knowledge and abilities regarding testing methodology, testing protocols, and quality assurance. Additionally, the performance reviews are relevant as to defenses Defendant may raise regarding Relator's performance as a Merck employee. Accordingly, the requests in the subpoena are relevant to the parties' claims and/or defenses. *See* Fed. R. Civ. P. 26(b)(1).

### B. Protective Order

Relator argues that she has already provided the requested information, or has confirmed it does not exist. (Relator's Mot. at 3). She also asserts that she made great efforts from preventing this litigation from interfering with her work at Alexion by never using work time to pursue this case. (*Id.*). Thus, she claims the subpoena is simply "a blatant attempt to disrupt [her] current employment relationship," and that involving Alexion in this litigation could jeopardize her current employment relationship. (*Id.* at 1, 3).

A party seeking a protective order must show that good cause exists to limit or foreclose discovery by demonstrating a particular need for protection.[5] *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). In determining whether good cause exists for a protective order, courts employ a balancing test, weighing the requesting party's need for information against the injury that might result if disclosure is compelled. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) (citation omitted). Injury includes annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c)(1). The alleged injury must be "so unreasonable as to justify restricting discovery." *DeFelice v. Consol. Rail Corp.*, 124 F.R.D. 603, 604 (W.D. Pa. 1989) (citing 8 C. Wright & A. Miller, *Federal*

---

[5] Typically, a motion for a protective order should be made by the party from whom the documents are sought. *New Park Entm't LLC, Elec. Factory Concerts, Inc.*, No. 98-775, 2000 WL 62315, at *4 (E.D. Pa. Jan. 13, 2000) (citing Fed. R. Civ. P. 45(c)(3)(A)). An exception to this rule exists where a party claims that it has some personal right or privilege with respect to the subject matter sought in the subpoena. *Id.* The parties do not dispute that Relator has standing to move for a protective order.

*Practice & Procedure*, § 2035 (1970)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not establish good cause. *Cipollone*, 785 F.2d at 1121.

Relator has not established that good cause exists for issuance of a protective order. Relator's argument that she has already responded to the requests in the subpoena does not foreclose Defendant from pursuing other avenues in discovery. Relator had searched only her personal files and emails. (*See* Relator's Mot. 2). Thus, the responses from Alexion may serve as a supplement to Relator's discovery production. *See New Park Entm't*, 2000 WL 62315, at *5.

Relator's claim that the subpoena could have serious ramifications for her at work also does not suffice to foreclose Defendant from seeking to subpoena Alexion. (*See generally* Relator's Mot. 1-4). It is unclear why involving Alexion in this litigation "poses a serious and unjustified risk to [her] relationship with her current employer." (*Id.* at 3-4). Relator states that she never used work time to pursue this case, and has made great efforts to prevent this litigation from interfering with her work. (Relator's Mot. at 3). To the extent that Relator fears that Alexion's knowledge of the lawsuit could harm her employment relationship, this argument is mere speculation. As noted by Defendant, the Complaint in this litigation is a publicly filed document, and this case has received some mainstream media attention. (Def.'s Resp. 2 (citing *Merck accused of stonewalling in mumps vaccine antitrust lawsuit*, Reuters (June 4, 2015) http://www.reuters.com/article/health-vaccine-idUSL1N0YQ0W820150604)). Relator's involvement in this suit is therefore a recognized matter of public record, and Relator's generalized allegation that the subpoena may harm her relationship with her current employer does not constitute the requisite good cause. *See Cipollone*, 785 F.2d at 1121; *see, e.g.*, *Sproull v. Golden Gate Nat'l Senior Care, LLC*, No. 2:08-1107, 2009 WL 2132433, at *2 (W.D. Pa. July

13, 2009) (finding plaintiff's claim of general fear of embarrassment and possible loss of her current position did not establish good cause to prohibit defendant from contacting plaintiff's current employer).

Relator also claims that the request for her performance evaluations is an invasion of her well-recognized privacy interest in her employment information. (Relator's Mot. 4). While individuals have "a legitimate privacy interest in information regarding their subsequent employment," *Zeller v. S. Cent. Emer. Med. Servs., Inc.*, No. 1:13-2584, 2014 WL 2094340, at *3 (M.D. Pa. May 20, 2014); *E.E.O.C. v. Princeton Healthcare Sys.*, No. 10-4126, 2012 U.S. Dist. LEXIS 65115, at * 63 (D.N.J. May 9, 2012), Defendant's need for information is greater than the possible injury that might result if the subpoena is issued, *see Pansy*, 23 F.3d 772, 786-87 (3d Cir. 1994). Cases in which a plaintiff's privacy interest has trumped a defendant's need for information typically involve "fairly routine case[s] alleging individual employment discrimination." *Zeller*, 2014 WL 2094340, at *3; *E.E.O.C.*, 2012 U.S. Dist. LEXIS 65115, at * 63; *see e.g.*, *Tinio v. St. Joseph's Reg. Med. Ctr.*, No. 13-829, 2014 WL 3345134, at *1 (D.N.J. July 7, 2014) (employment discrimination involving claims of retaliation after plaintiff appeared as a witness in another employee's EEOC hearing). A primary concern of subpoenaing a current employer is "the potential burdens of . . . broadcasting to a large group of businesses that the defendant view[s] plaintiff as an untrustworthy troublemaker." *Zeller*, 2014 WL 2094340, at *4 (quoting *Perry v. Best Lock Corp.*, No. IP 98-C-0936, 1999 WL 33494858, at *3 (S.D. Ind. 1999)); *E.E.O.C. v. Princeton Healthcare Sys.*, 2012 U.S. Dist. LEXIS 65115, at * 64 (same). Here, as noted above, this case, including Relator's involvement in the case, has received mainstream media attention. Thus, the concern of broadcasting a view that Relator is an "untrustworthy troublemaker" is minimal. Further, as discussed above, descriptions and

8

evaluations of Relator's quality assurance jobs at Alexion are relevant to Relator's knowledge and ability to identify improper testing and methodologies of therapies, such as vaccines. Accordingly, Defendant's need for the information is greater than Relator's privacy interest in her employment information. *See Pansy*, 23 F.3d at 786-87.

### C. Subpoena Limitations

Because I have determined that Defendant may subpoena Alexion, I must now determine whether there should be any limitations on the subpoena. *See Frank Brunckhorst Co.*, 2012 WL 5250399, at *9; *See In re Asbestos Products Liab. Litig.*, 256 F.R.D. 151, 156-57 (E.D. Pa. 2009). Pursuant to Rule 26(b)(2)(C), the Court must limit the extent of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Additionally, the Court may narrow requests that are overly broad or burdensome. *See Robertshaw v. Pudles*, No. 11-7353, 2013 WL 504894, at *1 (E.D. Pa. Feb. 12, 2013); *In re Asbestos Prods. Liab. Litig.*, 256 F.R.D. at 156-57.

Defendant's first request in the subpoena asks for "[d]ocuments pertaining to the Alexion positions [that Relator has held], including documents sufficient to show a description of each position, responsibilities associated with each position, and the qualifications necessary for each position." This request is overly broad and unduly burdensome. I have determined that documents pertaining to the positions Relator has held at Alexion are relevant to her qualifications, knowledge, and credibility; however, the request is not narrowly tailored to obtain only those documents. *See Robertshaw*, 2013 WL 504894, at *1 (narrowly tailoring the subpoena to the period at issue). Therefore, Defendant's first request in the subpoena is limited in scope to include only "documents sufficient to show a description of each position [Relator

9

held at Alexion], responsibilities associated with each position, and the qualifications necessary for each position."

Likewise, Defendant's second request in the subpoena is overly broad and unduly burdensome. The second request asks for "[d]ocuments pertaining to [Relator's] employment with Alexion, including documents sufficient to show her (a) application for employment at Alexion, (b) self-assessments, and (c) performance evaluations regarding [Relator]." "Documents pertaining to [Relator's] employment with Alexion" is far broader than the relevant issue of testimony Relator might provide in the case about her understanding of methodology, testing protocols, and quality assurance, and defenses Defendant may raise regarding Relator's performance as a Merck employee. (Def.'s Resp. at 2-3). Accordingly, Defendant's second request in the subpoena shall be revised to omit the general request for "documents pertaining to [Relator's] employment with Alexion," and shall specifically request only "documents sufficient to show [Relator's] (a) application for employment at Alexion, (b) self-assessments, and (c) performance evaluations [pertaining to Relator's employment with Alexion]." *See Robertshaw*, 2013 WL 504894, at *1.

Requests three and four in the subpoena request documents from Relator related to or referencing the Mumps Vaccine and related to or referencing this action. These requests are narrow and not overly broad or intrusive, and therefore do not require any modifications. *Zeller*, at 2014 WL 2094340, at *6.

Finally, I note that Defendant has specifically stated that issuance of the "subpoena could be easily avoided [if] Relator could agree to produce the records herself." (Def.'s Mot. 2). Thus, to avoid any additional expense or burden that the subpoena could potentially place on Alexion or Relator's relationship with Alexion, "Relator should be afforded the opportunity to provide

10

the information sought by Defendant[]." *Zeller*, at 2014 WL 2094340, at \*6. Therefore, Plaintiff will be granted fourteen days to fully respond to Request for Production No. 19,[6] as well as requests three and four of the proposed subpoena. If Plaintiff cannot or will not provide the information sought within fourteen days, Defendant will be permitted to subpoena Alexion, consistent with the limitations discussed herein. *See id; cf. Pansy*, 23 F.3d at 787 ("Courts have a great deal of flexibility in crafting the contents of protective orders.").

## IV. CONCLUSION

For the foregoing reasons, Relator's motion for a protective order is denied as stated herein. Defendant shall be allowed to subpoena Alexion consistent with the limitations outlined in this memorandum opinion. An appropriate order follows.

BY THE COURT:

*/s/ Lynne A. Sitarski*
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

---

[6] Request for Production No. 19 encompasses requests one and two of the subpoena. (*Compare* Def.'s Resp. Ex. 2, *with* Relator's Mot. Ex. D).

11